UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS KUZMICK, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA AUTOMOTIVE SYSTEMS, INC., HANLIN CHEN, QIZHOU WU, JIE LI, DAMING HU, ROBERT TUNG, GUANGXUN XU, WILLIAM THOMSON, and BRUCE C. RICHARDSON,<br><br>Defendants. | **Civil Action No. 11-cv-7533 (KBF)** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF RANDALL WHITMAN, BOB GEORGE, AND NANCY GEORGE FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR CHOICE OF COUNSEL AS LEAD COUNSEL**

Randall Whitman, Nancy George, and Bob George (collectively "Movants") respectfully submit this memorandum of law in support of their motion for: (1) appointment as lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4(a)(3)(B); and (2) approval of their selection of Bronstein Gewirtz & Grossman LLC as lead counsel.

## I.   PRELIMINARY STATEMENT

This class action was brought against China Automotive Systems, Inc. ("CAAS") and some of its former and/or current officers and/or directors alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") during the period between March 25, 2010 through and including March 17, 2011 (the "Class Period").

The Court should appoint Randall Whitman, Nancy George and Bob George (collectively "Movants") as lead plaintiffs because, to the best of their knowledge, they have the largest financial interest in the relief sought by the class. With losses of approximately $120,314 from Class Period transactions in CAAS securities, Movants should be lead plaintiffs because they have the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Procedure ("Rule 23").[1] Further, Movants respectfully request that the Court approve their selection of lead counsel, Bronstein Gewirtz & Grossman LLC, which is experienced with securities fraud class actions. See § III.C., infra; Kaplan v. Gelfond, 240 F.R.D. 88, 96 (S.D.N.Y. 2007) ("the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval") (citing 15 U.S.C. § 78u-4(a)(3)(B)(v)).

---

[1]   See Declaration of Peretz Bronstein in Support of Movants' Motion, dated December 26, 2011, Ex. C-D (loss certifications), and Ex. E. (loss chart).

## II.  FACTUAL BACKGROUND

This is a securities fraud class action on behalf of all persons who purchased or acquired CAAS securities, including purchasers of common stock, call options and sellers of put options during the period from March 25, 2010 through and including March 17, 2011 (the "Class Period"). *Complaint, ¶ 1 (Ex. B to Declaration of Peretz Bronstein, dated December 26, 2011).* This class action is brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. *Id.*

China Automotive Systems, Inc. ("CAAS" or the "Company") is a holding company and has no significant business operations or assets other than its interest in Great Genesis Holdings Limited (Genesis). *Complaint, ¶ 21.* Through Genesis, CAAS manufactures power steering systems and other component parts for automobiles. *Id.* Its shares were publicly traded on NASDAQ under the symbol "CAAS" during the Class Period. *Id., ¶ 11.*

On March 25, 2010, the Company issued a press release announcing its financial results for the fourth quarter of 2009 and for fiscal year ended December 31, 2009. *Complaint, ¶ 22.* For the fourth quarter of 2009, the Company reported that net income rose from $0.5 million, or $0.02 per diluted share, to $6.5 million, or $0.21 earnings per diluted share from the same quarter in 2008. *Id.* For the fiscal year 2009, the Company reported that net income grew to $23.4 million, or earnings per diluted share of $0.78. *Id.*

Also on that day, the Company filed its annual report on Form 10-K for the fiscal year ended December 31, 2009 with the SEC, which was signed by Defendants Chen, Wu, Li, Hu, Tung, Xu, Thomson, and Richardson. *Complaint, ¶ 23.* This report included several important

financial figures. *Id., ¶ 24.*  CAAS also filed several other important reports through September of 2010. *Id., ¶ 22-30.*

The reports' statements were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them: (1) the Company improperly accounted for its convertible notes issued on February 15, 2008; (2) that, as a result, the Company's financial results were incorrectly stated during the Class Period; (3) that the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times. *Complaint, ¶ 31.*

On March 17, 2011, CAAS shocked the market, disclosing for the first time that several previous statements were materially false. *Complaint, ¶ 32.*  In a press release and an 8-K report, CAAS stated that it would delay filing its annual 10-K and would restate previously issued financial statements for 2009 and 2010 due to errors in accounting related to its convertible notes issued on February 15, 2008. *Id., ¶ 32.*  As a result of the disclosures, CAAS securities plunged $1.42—almost 14%— to close at $8.81 on March 17, 2011, on unusually heavy volume. *Id, ¶ 33.*  And a few days later, the price dropped to $8.61 after CAAS disclosed that it failed to comply with NASDAQ's filing and disclosure requirements. *Id., ¶ 34.*

Nancy George, Bob George, and Randall Whitman (collectively "Movants") move for appointment as lead plaintiffs with a total of $120,314 in losses due to CAAS securities transactions during the Class Period. *See Bronstein Decl., Ex. C-D (Movants' Certifications) and E (Movants' Loss Chart).*  Bob and Nancy George, husband and wife, lost a combined $107,014,

Nancy losing $57,245 and Bob losing $49,769.  *Id*.  Randall Whitman lost $13,200 in the same Class Period, totaling a $120,314 loss. *Id*.  Movants have selected Bronstein Gewirtz & Grossman LLC ("BG&G") as counsel. *Bronstein Decl., ¶ 1*.  BG&G has experience with securities fraud class actions and has served as co-counsel for plaintiffs in various such cases; the firm also has the resolve and resources to vigorously litigate this matter to a result most favorable to the class. *Id., ¶ 2 and Ex. A (Firm Resume with list of securities class actions as co-counsel)*.

### III.   ARGUMENT

#### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See 15 U.S.C. § 78u-4(a)*.

First, the plaintiff who files the initial action must publish a notice within twenty days of filing, informing class members of their right to file a motion for appointment as lead plaintiff. *See 15 U.S.C. § 78u-4(a)(3)(A)(i)*.

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)*.

Third, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See 15 U.S.C. § 78u-4(a)(3)(B)(i)*.  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice…;

>    (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>    (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*; *see also* <u>Kaplan v. Gelfond</u>, 240 F.R.D. 88, 96 (S.D.N.Y. 2007).

Here, this action was commenced on October 25, 2011 and notice was published to potential class members on that same day. *See Bronstein Decl., Ex. F, Published Notices by Several Law Firms*. On December 2, 2011, the Honorable Judge Forrest ordered that potential class members have until January 13, 2012 to move to be appointed as lead plaintiff. *See Pacer, Document 3, p. 2*. Pursuant to the PSLRA's provisions and the Judge's Order, and within the requisite time frame after publication of the required notice, Movants timely move this Court to be appointed as lead plaintiffs on behalf of all members of the class.[2] In addition, the Movants have selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See Bronstein Decl., ¶ 2 and Ex. B (BG&G firm resume)*. Accordingly, the Movants satisfy the PSLRA's filing requirements for seeking appointment as lead plaintiff.

**B.     Movants are the "Most Adequate Plaintiff"**

    **1.     Movants have the Largest Financial Interest in the Relief Sought by the Class**

Movants suffered a loss of approximately $120,314 in connection with their transactions during the Class Period. Bob and Nancy George, husband and wife, lost a combined $107,014, Nancy losing $57,245 and Bob losing $49,769 (totaling $107,014 for the Georges). And

---

[2] Since notice was published on October 25, 2011, the 60-day filing deadline under the PSLRA would be December 24, 2011, which is a Saturday. *See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)*. Under FRCP Rule 6(a)(1)(C), when a deadline falls on a weekend, it is pushed to Monday—in this case, December 26, 2011. Therefore, Movants meet the deadline of both the Judge (January 13, 2012) and the PSLRA (December 26, 2011).

Whitman lost $13,200 in the same Class Period, totaling a $120,314 loss.  To the best of their knowledge, Movants' loss represents the largest financial interest in the relief sought by the class.

### 2. Movants Satisfy Rule 23's Requirements

In addition to possessing the largest financial interest, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)*.  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 has four requirements, at this stage of the litigation, a movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." In re Espeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *see also* Shi v. SINA Corp., 05-cv-2154, 2005 U.S. Dist. LEXIS 13176, at *7-8 (S.D.N.Y. July 1, 2005) ("At this stage, only a preliminary showing of typicality and adequacy is required.").

#### a. Movants' Claims are Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." Espeed, 232 F.R.D. at 102 (internal citation omitted).

Here, Movants' claims are typical because, just like all other class members asserting claims under the Exchange Act, Movants: (1) purchased CAAS securities during the Class

Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' conduct and CAAS failed to comply with NASDAQ's filing requirements, causing the price of CAAS securities to plunge.  *See* Reimer v. Ambac Fin. Group, Inc., 08-cv-0411, 2008 U.S. Dist. LEXIS 38729, at *12 (S.D.N.Y. May 9, 2008).  Thus, Movants' claims are typical of other class members' claims because their claims arise out of the same course of events and are predicated on identical theories of liability and damages.  *Id.*

### b.     **Movants Will Adequately Protect the Interests of the Class**

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class."  Specifically, the adequacy requirement is fulfilled when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Kaplan, 240 F.R.D. at 94; *see also* Shi, 2005 U.S. Dist. LEXIS 13176, at *9.

Here, Movants meet all 3 requirements and will adequately protect the class's interests.  Movants' interests are aligned with the interests of the class: Movants and the class suffered losses from the revelation of defendants' false and misleading statements and material omissions.  Movants each signed a certification stating that he or she is willing to serve as a representative of the class, including providing testimony at a deposition or trial (*Bronstein Decl., Exs. C-D*).  Finally, as discussed below, Movants' choice of counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, Movants have made a *prima facie* showing of typicality and adequacy.

### C. The Court Should Approve Movants' Selection of Counsel

The PSLRA vests authority in the lead plaintiffs to select and retain lead counsel, subject to the Court's approval. *15 U.S.C. § 78u-4(a)(3)(B)(v)*; Kaplan, 240 F.R.D. at 96. The Court should not disturb lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)*. Movants' choice of counsel, Bronstein Gewirtz & Grossman LLC ("BG&G"), should be approved because they are experienced in litigating securities fraud class actions and have the resources to prosecute this action to the greatest recovery possible for the class.

As set forth in Exhibits A of the Bronstein Declaration, BG&G is experienced in prosecuting complex class action litigation. In fact, BG&G has served as co-counsel in a number of securities class actions, some of which resulted in sizeable recoveries for the class. Thus, the Court may be assured that BG&G will provide class members with the highest caliber of legal representation available. BG&G has the expertise, experience and resources to zealously represent the class's interests.

### IV. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (1) appoint Movants as lead plaintiffs pursuant to the PSLRA; and (2) approve Movants' selection of Bronstein Gewirtz & Grossman LLC as lead counsel for the class.

DATED:  December 26, 2011

        Respectfully submitted,

        Bronstein Gewirtz & Grossman LLC

        By: */s/ Peretz Bronstein*
            Peretz Bronstein (PB8628)
            Shimon Yiftach (SY4433) (Of Counsel)
            60 East 42nd Street, Suite 600
            New York, NY 10165
            Telephone:  (212) 697-6484
            Facsimile:  (212) 697-7296

            *Counsel for Bob George, Nancy George, and Randall Whitman*